UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DA'SHAWN RUSSELL, 13B0551,

                      Plaintiff,

-vs-                              DECISION AND ORDER

YOUNG, ARMSTRONG, WURSTER, DEWALD,      18-CV-6209 (CJS)
SGT. PUNDT, P. GREIS, J. THOMPSON, & A. ANNUCCI,

                      Defendants.

---

Plaintiff Da'Shawn Russell ("Russell") filed a complaint pursuant to 42 U.S.C. § 1983 "alleging excessive use of force and denial of medical care in violation of the Eighth Amendment to the United States Constitution and confinement in (SHU) in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution." Compl., Mar. 12, 2018, ECF No. 1. Defendants Young, Armstrong, Wurster, Dewald and Sgt. Pundt are corrections officers of the New York State Department of Corrections and Community Supervision ("DOCCS") working at Collins Correctional Facility ("CCF"). Compl. at ¶ 4. Defendant P. Greis is the Deputy of Security at CCF, Defendant J. Thompson is Superintendent of CCF, and Defendant A. Annucci is the acting Commissioner of DOCCS. Comp. at ¶ 5–6.

Fact discovery was completed by the parties on March 2, 2020, and the matter is now before the Court on Defendants' motion for partial summary judgment.[1] ECF Nos. 30, 34. In particular, Defendants argue that Russell has failed to show that he exhausted administrative remedies with respect to defendants Thompson and Annucci, and consequently that the claims against them should be dismissed. Pl. Mem. of Law, 2, May 1, 2020, ECF No. 34-3. Alternatively, Defendants maintain that Russell's allegations against defendants Thompson and Annucci should be dismissed for failure to allege their personal involvement in the offensive conduct. Pl. Mem. of Law at 4.

For the reasons stated below, Defendants' motion for partial summary judgment [ECF No. 34] is granted, Russell's claims against defendants Thompson and Annucci are dismissed, and the Clerk is directed to terminate J. Thompson and A. Annucci as defendants in this action.

## BACKGROUND

The basis for Russell's § 1983 claims of excessive use of force and violation of due process is an incident that occurred on June 27, 2015 in which defendants Corrections Officers Young, Armstrong, Wurster, Dewald, and Sgt. Pundt were involved in a use of force to restrain Russell. That incident led to the filing of a misbehavior report in which

---

[1] Under *Irby v. New York City Transportation Authority*, 262 F.3d 412 (2d Cir. 2001), unless the opposing party has already provided the *pro se* litigant with the requisite notice, the court is obligated to inform him that failure to respond to a motion for summary judgment may result in the grant of judgment for the party seeking summary judgment and dismissal of the case. The Court notes in the instant action that, although Russell filed his complaint *pro se*, in the interim he retained counsel. Notice, Mar. 13, 2019, ECF No. 23. Hence, an *Irby* notice is not necessary.

Russell was charged with violent conduct, violation of a direct order, and violation of frisk procedures. Pl. Mem. of Law (Ex. A), 1, May 21, 2020, ECF No. 35-1.

A hearing on Russell's misbehavior report was held beginning on July 2, 2015 and ending on July 8, 2015, after which defendant P. Greis, Deputy Superintendent of Security at CCF, found Russell to be guilty of all charges. Pl. Mem. of Law (Ex. A) at 6. Russell appealed the decision on several grounds, including the following:

> I pled not guilty before [Greis], and told my side of the story. He adjourned [the hearing] until 7/6/15 . . . On 7/6/15, Sgt. Pundt told a story. Then I question Pundt. When ask about the cut over my eye? He said "when he went down it happen." I object to that for a few reasons. But [Greis] stop me and said I can only question the witness and no objections?? On 7/7/15 . . . CO Young told a story. Then I question Young. Young was asked about the cut over my eye? He said "It happen when he went down." Then I said "what about this 3 inch deep cut under my chin?" Young stutter his words, and said, "He know nothing about that!" Then Greis says to Young "He got it when he went down right." Then Young says "Yes when he went down." I tried to object but Greis stop me! Dept. Greis lead the witness by giving him an answer to the question ask. That was highly prejudicial to my hearing . . . . . The 14th Amendment to the U.S. Constitution, states that no person shall be deprived of "liberty" without "due process of law." In 1974, the Supreme Court, in a case called Wulff v. McDon[ald] . . . interpreted this provision to mean that an inmate may not be subject to a prison disciplinary hearing at which good time can be taken without at least minimum requirements of "due process." Under state and federal constitution an inmate is entitled to an impartial, unbiased hearing officer. By Greis helping Young answer a question he has no answer for, made him partial and biased to my hearing. Which violated my "due process" . . . .

Pl. Mem. of Law (Ex. A.) at 7. Thereafter, D. Venettozzi, DOCCS Director of Special Housing/Inmate Disciplinary Program sent Russell a letter stating, "[o]n behalf of the Commissioner and in response to your recent letter of appeal, please be advised that your

Superintendent's Hearing of July 8, 2015, has been reviewed and affirmed on August 25, 2015." Pl. Mem. of Law (Ex. A) at 13.

In addition to the appeal of his misbehavior report, Russell filed three grievances related to the June 27, 2015 incident. Def. Rule 56 Statement, ¶ 2, May 1, 2020, ECF No. 34-1. The first grievance was filed on July 7, 2015, and alleged physical assault. Def. Rule 56 Statement (Ex. A), 7, May 1, 2020, ECF No. 34-2. The Inmate Grievance Response Committee ("IGRC") passed the grievance through to the superintendent for investigation, and on August 18, 2015, the superintendent denied the grievance because Russell had provided no witnesses, and the corrections officers involved had all filed written statements denying wrong-doing. *Id.* Russell appealed the superintendent's determination, noting the extent of his injuries. *Id.* On November 18, 2015, the Inmate Grievance Program Central Office Review Committee ("CORC") upheld the superintendent's decision. Def. Rule 56 Statement (Ex. A) at 5.

Russell filed the second grievance on July 17, 2015, while the first grievance was still pending. The grievance stated:

> Dep. P. Greis violated my 8th and 14th amendments of the U.S. constitution (Failure to protect & equal protection) state and federal . . . . He failed as security to protect me from further harm from officers who assaulted & battered me. And officers even though I'm in the [Special Housing Unit], still continue to come by my door and threaten me. This is highly prejudicial to my 14th of the U.S. constitution (equal protection of the law) . . . .

Def. Rule 56 Statement (Ex. B), 46, May 1, 2020, ECF No. 34-2. Notwithstanding the IGRC's recommendation on July 24, 2015 that a hearing be held, the Superintendent denied

Russell's grievance on July 29, 2015, noting that Russell's "allegations were investigated properly by security staff." *Id.* On September 9, 2015, CORC upheld the Superintendent's decision, noting that Greis "properly responded to [Russell]'s letters . . . after initiating an in-house investigation." Def. Rule 56 Statement (Ex. B) at 44.

Russell filed the third grievance on August 25, 2015. Def. Rule 56 Statement (Ex. C), 65, May 1, 2020, ECF No. 34-2. Russell noted that since the date of the use of force on June 27, 2015, he had been "experiencing extreme headaches," and "becoming dizzy and seeing spots before my eyes, and . . . vomiting." *Id.* Therefore, he requested "to receive the proper medical attention." *Id.* The IGRC recommendation was that Russell "follow proper sick call procedures to address any further concerns," and on September 24, 2015 the Superintendent found that Russell had received appropriate medical care and that he would continue to receive appropriate medical care. *Id.* On November 18, 2015, CORC upheld the Superintendent's decision, stating that it "has not been presented with sufficient evidence of improper medical care or malfeasance by staff," and advised Russell to "address medical concerns via sick call." Def. Rule 56 Statement (Ex. C) at 63.

On March 12, 2018, Russell filed the instant action, alleging violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution, and New York state law. Compl. at ¶ 45–48. On May 1, 2020, Defendants filed the motion for partial summary judgment presently before the Court for the limited purpose of seeking dismissal of A. Annucci and J. Thompson as defendants in this case.

## SUMMARY JUDGMENT STANDARD

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party."). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, "[a] party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to

particular parts of the record, or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Courts must view the underlying facts contained in affidavits, attached exhibits, and depositions, in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**DISCUSSION**

Two of Russell's § 1983 claims involve defendants Thompson and Annucci. Russell maintains that both Thompson and Annucci failed to take action to curb a known pattern of physical abuse of CCF inmates by several corrections officers, which constituted a violation of Russell's Eighth Amendment rights. Compl. at ¶ 47. In addition, Russell argues that by upholding the disciplinary decision against him on his rule violations, Annucci had denied him due process of law in violation of the Fourteenth Amendment.

The legal principles applicable to claims filed pursuant to 42 U.S.C. § 1983 are well settled. First, before "a prisoner confined in any jail, prison, or other correctional facility" may file a § 1983 claim, he must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Following the exhaustion of administrative remedies, in order to establish individual liability under § 1983, a prisoner plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a constitutional right. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 181 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Defendants' instant motion for partial summary judgment presents two arguments. First, Defendants argue that Russell has failed to show that he exhausted his administrative remedies with respect to defendants Thompson and Annucci, and thus that the claims against Thompson and Annucci should be dismissed. In addition, Defendants maintain that Russell has failed to allege Thompson's and Annucci's personal involvement in the offensive conduct, and thus that the claims against Thompson and Annucci should be dismissed.

Exhaustion of Administrative Remedies

In New York State, administrative remedies for most inmate grievances consist of a three-step grievance and appeal procedure. First, within 21 calendar days of an alleged occurrence, the grievant must submit a grievance in writing to the Inmate Grievance Resolution Committee ("IGRC") at the facility for investigation and review. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)–(b). Notably, the New York inmate grievance regulations require that the written grievance "contain a concise, specific, description of the problem," but the regulations "do not state that a prisoner's grievance must name the responsible party." *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (citing, *inter alia*, *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Next, if the grievant is dissatisfied with the IGRC's determination, or if the IGRC is unable to reach a determination, the grievant may appeal

to the facility's superintendent. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(c)(1). Finally, if the grievant is still dissatisfied, he must appeal to the Inmate Grievance Program's Central Office Review Committee ("CORC"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(1). Alternatively, where an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing (e.g., that he was denied due process during the hearing), he need not initiate a separate grievance and appeal process but may "exhaust[] his administrative remedies by presenting his objections in the administrative appeals process . . . ." *Rosales v. Bennett*, 297 F. Supp.2d 637, 639 (W.D.N.Y. 2004) (quoting *Flanagan v. Maly*, 99 Civ. 12336, 2002 WL 122921 at *2 (S.D.N.Y. Jan.29, 2002)) (internal quotation marks omitted).

The Court finds that in the present case, Russell has shown that he has exhausted his administrative remedies. With respect to his claims that defendants Thompson and Annucci failed to take any action to curb the physical abuse of inmates by several corrections officers in violation of his Eighth Amendment rights, the Court notes that Russell's second grievance, filed on July 15, 2015, did state that defendant Greis, "failed as security to protect me from further harm from officers who assaulted & battered me. And officers even though I'm in the [Special Housing Unit], still continue to come by my door and threaten me . . . ." Def. Rule 56 Statement (Ex. B) at 46. As indicated above, New York grievance procedures require only a description of the problem, and not that all defendants be identified by name. *See also Zappulla v. Annucci*, 636 F. App'x 824, 825 (2d

Cir. 2016) (citing *Espinal*, 558 F.3d at 127; *Jones*, 549 U.S. at 218). Here, "by giving the state an opportunity to correct any errors and avoiding premature litigation" on claims that his Eighth Amendment rights were being violated, Russell satisfied the intent behind the exhaustion requirement. *See Read v. Calabrese*, No. 9:11-CV-459 GLS/DEP, 2013 WL 5506344, at *10 n.6 (N.D.N.Y. Aug. 29, 2013) (quoting *Flanagan*, 2002 WL 122921, at *2).

With respect to his due process claims against defendant Annucci, the Court notes that Russell exhausted his administrative remedies by alleging that defendant Greis, by helping defendant Young answer a question during his disciplinary hearing, was acting as a partial and biased hearing officer in violation of his Fourteenth Amendment rights. Pl. Mem. of Law (Ex. A) at 7. Notwithstanding Defendants' argument that "there is no record of the alleged grievance," Russell's appeal of the superintendent's decision to the DOCCS Commissioner was sufficient to exhaust his administrative remedies for his claim that arose from a disciplinary hearing. *See Rosales*, 297 F. Supp.2d at 639. Although the record is not crystal clear with respect to Russell's appeal, his submission of both his "Appeal Form to Commissioner" (Pl. Mem. of Law (Ex. A) at 7) and of the letter from D. Venettozzi informing him that his "Superintendent's Hearing of July 8, 2015 was reviewed and affirmed on August 25, 2015" (Pl. Mem. of Law (Ex. B-4) at 13) was sufficient to create an inference in Russell's favor at this stage of the proceedings.

Defendants' Personal Involvement

Nevertheless, Russell has failed to show that defendants Thompson and Annucci were personally involved in any actions that led to the violations of Russell's Eighth and Fourteenth Amendment rights. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991). Moreover, "there is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995) (citing *Monell v. New York City Dep't of Social Serv*., 436 U.S. 658, 691 (1978)). Indeed, as the Second Circuit has recently pointed out, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that a plaintiff may not rely on a special test for supervisory liability, but instead "'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

In the present case, Russell's allegations against Thompson and Annucci do not satisfy the requirements of Rule 56(c)(1) of the Federal Rules of Civil Procedure, which require that the non-movant support his assertions by citing to "particular parts of the record." For instance, in his opposition papers Russell attempts to demonstrate Annucci's "deliberate indifference" to physical abuse by corrections officers by noting that the letter from D. Venettozzi affirming the superintendent's determination of Russell's disciplinary appeal was written "on behalf of the Commissioner," and on letterhead listing Annucci as

the acting DOCCS commissioner. Pl. Mem. of Law at 2; Pl. Mem. of Law (Ex. B-4) at 13. Russell suggests that this letter is sufficient to raise a question of fact regarding Annucci's knowledge of Russell's case. Further, with respect to Thompson's involvement in the violation of Russell's Eighth Amendment rights, Russell notes that, as Superintendent of CCF, Thompson is copied on many of the documents regarding Russell's grievances, and asks "[w]hether it is plausible to believe that the Facility's head officer was unaware of the allegations against the [Corrections Officers] under his command . . . [?]" The Court finds these allegations insufficient to demonstrate defendants Annucci's or Thompson's personal involvement in the alleged Eighth Amendment violations. *See, e.g., Tangreti*, 983 F.3d at 618–620 ("The deliberate-indifference standard 'require[es] a showing that the official was subjectively aware of the risk,' [*Farmer v. Brennan*, 511 U.S. 825, 829 (1994)] and that showing has not been made.")

Neither are Russell's papers sufficient to demonstrate defendant Annucci's personal involvement in the purported denial of Russell's Fourteenth Amendment due process rights. After a review of the record, the Court is satisfied that Annucci, the DOCCS Commissioner, was not sufficiently involved in the alleged denial of due process to subject him to personal liability. Russell has presented no evidence to suggest that Annucci participated directly in any of the hearings throughout the grievance process, participated in any reviews of Russell's disciplinary appeal, or had reason to suspect that there had been any wrongdoing. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). The mere

fact that Annucci was in a high position of authority is an insufficient basis for the imposition of personal liability on Russell's Fourteenth Amendment claim. *Id.*

## CONCLUSION

Consistent with the foregoing, it is hereby

ORDERED that Defendants' motion for partial summary judgment [ECF No. 34] is granted as to Russell's claims against defendants J. Thompson and A. Annucci; and it is further

ORDERED that the Clerk of Court terminate J. Thompson and A. Annucci as parties to this action.

SO ORDERED.

DATED:    May 24, 2021
          Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge